UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 9-CV-02212 (JFB) (ETB)
_____

HILDA L. SOLIS, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR

Plaintiff,

VERSUS

SCA RESTAURANT CORP. D/B/A LUIGI Q ITALIAN RESTAURANT, A CORPORATION
AND LUIGI QUARTA, INDIVIDUALLY AND AS OWNER

Defendants.

_____

**MEMORANDUM AND ORDER**
December 1, 2011
_____

JOSEPH F. BIANCO, District Judge:

This action was commenced by plaintiff Hilda L. Solis, Secretary of the United States Department of Labor ("DOL"), pursuant to Sections 16(c) and 17 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. Defendant Luigi Quarta ("Quarta"), the owner of defendant SCA Restaurant Corp., is in the midst of a Chapter 7 bankruptcy proceeding, and contends that the automatic stay arising under Section 362 of the Bankruptcy Code serves to stay the instant action. For the reasons stated below, the Court finds that the government may proceed with its FLSA claim against defendant Quarta under the police and regulatory powers exemption to the automatic stay, pursuant to 11 U.S.C. § 362(b)(4).[1]

I. BACKGROUND

In a complaint filed against Quarta and SCA Restaurant Corp. on May 21, 2009, the DOL alleges that defendants violated Sections 7 and 15(a)(2) of the FLSA by failing to pay minimum wage and overtime compensation to the employees of SCA Restaurant Corp., and that defendants violated Sections 11(c) and 15(a)(5) of the FLSA by failing to keep full and accurate records concerning their employees' wages,

---

[1] The automatic stay issue does not relate to the other defendant, SCA Restaurant Corp., because the corporate defendant has not filed for bankruptcy and, in any event, there is no basis to stay the action as to the corporate entity.

hours, and conditions of employment. 29 U.S.C. §§ 207, 211(c), 215(a)(2), 215(a)(5). The DOL sought an injunction pursuant to Section 17 of the FLSA permanently restraining defendants from violating Sections 7, 11(c), 15(a)(2), and 15(a)(5) of the FLSA, and an order pursuant to Section 16(c) finding defendant liable for unpaid overtime compensation and an equal amount of liquidated damages.

After the DOL filed the instant suit, Quarta filed for voluntary bankruptcy under Chapter 7 of the Bankruptcy Code in the Eastern District of New York. In the instant motion, Quarta urges the Court to find that the DOL's action is stayed under the automatic stay provision pursuant to Section 362 of the Bankruptcy Code.

## II. LEGAL STANDARDS

Under 11 U.S.C. § 362(a)(1), the filing of a bankruptcy petition automatically stays the commencement or continuation of judicial proceedings against the debtor.[2] *See E. Refractories Co. Inc., v. Forty Eight Insulations, Inc.*, 157 F.3d 169, 172 (2d Cir. 1998). The automatic stay is a fundamental component of a bankruptcy petition, as it "provides the debtor with a breathing spell from his creditors" and "allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *Shugrue v. Air Lines Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 989 (2d Cir. 1990) (internal citations and quotation marks omitted).

Section 362(b)(4) of the Bankruptcy Code provides an exception to the automatic stay for actions by a governmental unit to enforce its police or regulatory power. Specifically, it provides that the filing of a bankruptcy petition does not operate as a stay against:

> commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power.

11 U.S.C. § 362(b)(4). As the Second Circuit explained, "the purpose of this exception is to prevent a debtor from frustrating necessary governmental functions by seeking refuge in bankruptcy court." *SEC v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000) (internal quotation and citations omitted). "Thus, 'where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the

---

[2] Section 362(a) provides, in relevant part:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of— (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

2

action or proceeding is not stayed under the automatic stay.'" *Id*. (quoting H.R. Rep. No. 95-595 at 343).

In attempting to apply the § 362(b)(4) exception, courts look to the purposes of the law that the government seeks to enforce to distinguish between situations in which a "state acts pursuant to its 'police and regulatory power,' and where the state acts merely to protect its status as a creditor." *Safety-Kleen, Inc. v. Wyche (In re Pinewood)*, 274 F.3d 846, 865 (4th Cir. 2001) (quoting *Universal Life Church, Inc. v. United States (In re Universal Life Church, Inc.)*, 128 F.3d 1294, 1297 (9th Cir. 1997)); *United States ex rel. Fullington v. Parkway Hosp., Inc.*, 351 B.R. 280, 282-83 (E.D.N.Y. 2006). Two tests have been historically applied to resolve this question: (1) the "pecuniary purpose" test (also known as the "pecuniary interest" test), and (2) the "public policy" test. *See In re Methyl Tertiary Butyl Ether ("MTBE") Products Liab. Litig.*, 488 F.3d 112, 133 (2d Cir. 2007); *Universal Life Church*, 128 F.3d at 1297; *Parkway Hosp.*, 351 B.R. at 283; *see also In re Chateaugay Corp.*, 115 B.R. 28, 31 (Bankr. S.D.N.Y. 1988). Under the pecuniary purpose test, a court looks to whether a governmental proceeding relates to public safety and welfare, which favors application of the stay exception, or to the government's interest in the debtor's property, which does not. *See MTBE*, 488 F.3d at 133; *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1108-09 (9th Cir. 2005). "If it is evident that a governmental action is primarily for the purpose of protecting a pecuniary interest, then the action should not be excepted from the stay." *Eddleman v. U.S. Dep't of Labor*, 923 F.2d 782, 791 (10th Cir. 1991), *overruled in part on other grounds by Temex Energy, Inc. v. Underwood*, 968 F.2d 1003 (10th Cir. 1992).

Other courts have backed away from the "pecuniary purpose" test, and apply a broader "pecuniary advantage" test. *United States v. Commonwealth Cos. (In re Commonwealth Cos.)*, 913 F.2d 518, 523-25 (8th Cir. 1990); *see also United States ex rel. Jane Doe 1 v. X, Inc.,* 246 B.R. 817, 820 (E.D. Va. 2000). Under the "pecuniary advantage" test, the relevant inquiry is not whether the governmental unit seeks property of the debtor's estate, but rather whether the specific acts that the government wishes to carry out would create a pecuniary advantage for the government vis-à-vis other creditors. *See Commonwealth Cos.*, 913 F.2d at 523; *Jane Doe 1*, 246 B.R. at 820. Thus, the "pecuniary advantage" analysis has been used as an alternative formulation of the first test.

The second test – namely, the public policy test – distinguishes "'between proceedings that adjudicate private rights and those that effectuate public policy.'" *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 385-86 (6th Cir. 2001) (quoting *In re Commerce Oil Co.*, 847 F.2d 291, 295 (6th Cir. 1988)); *see Eddleman*, 923 F.2d at 791. An action may further both public and private interests. Where "an action furthers both public and private interests," reviewing courts should exempt the action from the automatic stay if "the private interests do not significantly outweigh the public benefit from enforcement." *Chao*, 270 F.3d at 390.

The tests are overlapping to some extent, and there also appears to be some confusion in the case authority as to whether both the pecuniary test and the public purpose test must be satisfied for an action to be exempted, or whether one is sufficient. In fact, the Ninth Circuit has discussed this specific issue. *Compare Lockyer v. Mirant Corp.*, 398 F.3d at 1108 ("A suit comes within the exception of § 362(b)(4) if it satisfies either test.") *with City & Cnty. of*

3

*S.F. v. PG&E Corp.*, 433 F.3d 1115, 1125 n.11 (9th Cir. 2006) ("Our controlling precedent, as we have discussed, quite plainly states satisfying either the 'pecuniary interest' or 'public policy' test will suffice. That being said, '[v]iewing the tests as disjunctive perhaps does not always make sense, however.'") (quoting *Fed. Trade Comm'n v. First Alliance Mortg. Co. (In re First Alliance Mortg. Co.)*, 264 B.R. 634, 647 n.11 (Bankr. C.D. Cal. 2001)); *see also Eddleman*, 923 F.2d at 791 ("In the case at bar, we conclude that DOL's enforcement proceedings are exempt from the stay under either test."); *Massachusetts v. New England Pellet, LLC*, 409 B.R. 255, 259 (D. Mass. 2009) ("If either test is satisfied the case is considered an enforcement action.")

The Second Circuit has not yet ruled on which test to apply. *See MTBE*, 488 F.3d at 133 ("we do not find it necessary to pass on the validity of these tests at this time"); *Fed. Trade Comm'n v. Consumer Health Benefits Ass'n*, 10-CV-3551 (ILG), 2011 U.S. Dist. LEXIS 61305, at *9 (E.D.N.Y. June 8, 2011) ("The Second Circuit has yet to pass on the validity of any particular test."). In a prior opinion, this Court held that the pecuniary advantage test, rather than the pecuniary interest test, should be utilized. *See Parkway Hospital*, 351 B.R. at 286 ("The Court agrees that the pecuniary advantage test is the appropriate standard to apply regarding the § 362(b)(4) exception . . . .").

However, in an abundance of caution, the Court has examined the facts of this case under each of the above-referenced tests and concludes, for the reasons set forth below, that the § 362(b)(4) exception applies in the instant case regardless of which test is utilized. In other words, the instant lawsuit is exempt from the automatic stay under both the first test – whether the "pecuniary purpose" test or the "pecuniary advantage"

test is utilized – as well as the "public policy" test. *See, e.g.*, *In re Trinity Meadows Raceway, Inc.*, Adversary No. 06-04165, 2007 WL 2713920, at *6 n.29 (N.D. Texas Sept. 11, 2007) ("Although it is not clear whether a governmental unit must pass either or both tests, the inquiry is inconsequential because, as the court addresses below, Defendants' actions pass both the pecuniary interest and public policy tests.").

### III. DISCUSSION

#### A. Pecuniary Purpose or Pecuniary Advantage Test

First, the instant case is exempt from the stay under the pecuniary purpose or interest test, as well as the pecuniary advantage test.[3]

With respect to the pecuniary purpose or interest test, the government has no pecuniary interest in defendants' estate. *See Eddleman*, 923 F.2d at 791 ("DOL's pursuit of debarment and liquidation of back-pay claims" was not "designed to advance the government's pecuniary interest," but rather was intended "primarily to prevent unfair competition in the market by companies who pay substandard wages."); *Martin v. Safety Elec. Const. Co.*, 151 B.R. 637, 639 (D. Conn. 1993) (DOL action seeking injunction and monetary damages for violations of minimum-wage provisions of the FLSA was "not designed to advance the government's pecuniary interest"). The

---

[3] Defendants concede in their opposition papers that the government satisfies this first test because the government will not obtain a pecuniary advantage in Bankruptcy Court, and simply argue that the public policy test is not satisfied. *See* Defs.' Opp. at 3-4 ("As this Court applied the pecuniary interest test in *Fullington*, the government – as an unsecured creditor – satisfies this test since it will not obtain a pecuniary advantage in the Bankruptcy Court.") (footnote omitted).

4

government seeks an injunction to prevent further violations of the FLSA, as well as liquidated damages equal to the amount of the employees' unpaid overtime compensation. If the government succeeds, the DOL will not obtain title to any goods, nor be able to enforce a monetary judgment against defendants. *See Chao v. Mike & Charlie's Inc.*, No. Civ.A. H-05-1780, 2006 U.S. Dist. LEXIS 2178, at *8 (S.D. Tex. Jan. 4, 2006) ("The Secretary would not obtain title to any goods nor be able to enforce a money judgment. These remedies are not designed to advance the government's pecuniary interest."); *Martin*, 151 B.R. at 639 ("individuals claiming unpaid wages will not receive any extra priority by virtue of this action" since "collection of the back pay and liquidated damages claims must proceed according to normal bankruptcy procedures").

For the same reasons, the action at issue passes the broader pecuniary advantage test. Should the government succeed in winning a monetary judgment against defendants, enforcement of the money judgment will take place in bankruptcy court. Consequently, the suit's monetary claims would be subject to bankruptcy procedures just like any other claim against the debtor, and would not, therefore, confer any advantage on the government vis-à-vis other creditors.

B. Public Policy Test

The DOL's action also satisfies the public policy test. The action enforces the DOL's regulatory powers under the FLSA – specifically, ensuring that covered employees receive minimum wage and overtime compensation, and that employers maintain proper wage and hour records. The injunction sought by DOL would serve to prevent further violations, protect labor conditions, and prevent "unfair labor competition in the market from companies who pay substandard wages." *Chao v. BDK Indus., LLC*, 296 B.R. 165, 168 (C.D. Ill. 2003). Moreover, should the DOL succeed in obtaining a money judgment against the defendant, such a judgment could deter unlawful behavior by others. *See Parkway Hosp.*, 351 B.R. at 287 ("the imposition of financial liability on a party deters unlawful behavior and thus serves the police and regulatory efforts of the government"). Thus, this Court holds that actions undertaken by the DOL to enforce wage and hour protections fall squarely within the § 362(b)(4) exemption.

Although never addressed by the Second Circuit, numerous courts have reached a similar conclusion in analogous cases. For example, in *Eddleman v. U.S. Dep't of Labor*, the DOL filed an administrative action against a mail-hauling business that worked under a contract with the United States Postal Service. The DOL alleged violations of the Service Contract Act ("SCA"), 41 U.S.C. §§ 351-358, now 41 U.S.C. §§ 6701-6707, which requires federal government contractors to pay certain minimum wages and benefits, and to keep adequate records of hours worked and wages paid. 923 F.2d at 783. The DOL sought to liquidate claims for back wages owed to the Eddlemans' employees, and to put the Eddlemans on a list of SCA violators, which would debar them from contracting with the government for three years. *Id.*

In the *Eddleman* case, the Tenth Circuit held that the DOL action was exempt from the automatic stay under § 362(b)(4). *Id.* at 791. The "public policy" test presented "no barrier" to the DOL action because seeking back pay on behalf of specific individuals was not "an assertion of private rights." *Id.* Instead, it was a method of "enforcing the policies underlying the SCA." *Id.* This was especially true because back-pay claimants

5

would not receive any extra priority as a result of the DOL action, since collection of the claims would proceed in bankruptcy court. *Id.*

Although the violations at issue in *Eddleman* concerned the SCA and not the FLSA, both acts seek to ensure that employers pay their employees in accordance with overtime and minimum wage laws, and that they keep adequate and accurate records reflecting those payments. Accordingly, the same analysis would apply in determining whether an action concerning unpaid minimum wages or overtime compensation satisfies the relevant tests, regardless of whether the action is brought pursuant to the SCA or the FLSA.

Defendant seeks to distinguish *Eddleman*, arguing that while the DOL's pursuit of liquidated damages was an assertion of private rights that would not, accordingly, pass the public policy test, the *Eddleman* court exempted the action from the automatic stay because DOL also sought an injunction debarring the defendants from contracting with the government. Yet the *Eddleman* court made clear that the public policy test "present[ed] no barrier to DOL's actions," because the liquidation of back-pay claims was not an assertion of private rights, but was "another method of enforcing the policies underlying the SCA." *Id.* at 791. Moreover, in the action at bar, the DOL does not seek only liquidated damages, but also an injunction preventing further violations of the FLSA. Thus, the *Eddleman* case is directly on point and this Court finds the analysis persuasive. *See also Brock v. Rusco Indus.*, 842 F.2d 270, 273 (11th Cir. 1988) ("We believe that the Secretary brought this suit under his police power. The Secretary brought this suit to protect legitimate businesses from unfair competition and to enforce the federal law regarding minimum wage. Since the Secretary is suing under the government's police power, his suit is exempted from the automatic stay provision.") (footnote omitted).

Indeed, a number of district courts have also ruled that suits by the Secretary seeking to enjoin defendants from violating the FLSA's minimum wage, overtime, and record-keeping requirements, and seeking liquidated damages for those violations, fall within the police and regulatory power exemption from the automatic stay. *See Martin*, 151 B.R. at 639 (DOL action seeking injunction and monetary damages for violations of minimum-wage provisions of the FLSA was exempt from stay because the remedies acted as a mechanism to enforce the policies underlying the FLSA, and because the employees would not receive priority over other creditors); *Martin v. Chambers*, 154 B.R. 664, 667 (E.D. Va. 1992) (action seeking injunction and damages was exempt from stay because it was brought pursuant to DOL's "mandate to regulate and enforce fair labor standards"); *Dole v. Sears*, No. 88-6160-CV-SJ-8, 1989 U.S. Dist. LEXIS 15149, at *2 (W.D. Mo. June 16, 1989) (FLSA action seeking injunction and damages was "unquestionably an exercise of police or regulatory powers"); *see also Chao v. Mike & Charlie's Inc.*, 2006 U.S. Dist. LEXIS 2178, at *7-8 (DOL action seeking to enjoin future minimum-wage violations of the FLSA was exempt from stay); *BDK Indus., LLC*, 296 B.R. at 170 (DOL action seeking to enjoin future minimum-wage violations of the FLSA was exempt from stay because the primary purpose of the action was "to protect workers and to prevent unfair competition in the market by companies who pay substandard wages"); *Donovan v. Health Care Res., Inc.*, 44 B.R. 546, 547 (W.D. Mo. 1984) (DOL action seeking to enjoin future minimum-wage violations of the FLSA "constitute[d] an exercise of

police or regulatory powers" and was therefore exempt from stay).

Courts have also applied the police and regulatory power exemption to analogous actions by federal agencies to enforce labor and employment statutes. *See, e.g.*, *NLRB v. 15th Ave. Iron Works, Inc.*, 964 F.2d 1336, 1337 (2d Cir. 1992) (per curiam) (NLRB unfair labor practice and enforcement proceedings exempt from stay under § 362(b)(4)); *NLRB v. Cont'l Hagen Corp.*, 932 F.2d 828, 835 (9th Cir. 1991) (NLRB action seeking back-pay and other relief exempt from stay); *Pension Benefit Guar. Corp. v. LTV Corp.*, 875 F.2d 1008, 1020 (2d Cir. 1989) (decision to restore full liability after corporation terminated pension benefit plans was exempt from stay), *rev'd on other grounds*, 496 U.S. 633 (1990); *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 942-43 (6th Cir. 1986) (NLRB action seeking union members' lost wages exempt from stay); *EEOC v. Rath Packing Co.*, 787 F.2d 318, 324-25 (8th Cir. 1986) (EEOC employment discrimination action to recover back pay exempt from stay); *Parkway Hosp.*, 351 B.R. at 288-89 (DOL action under False Claims Act exempt from stay because deterring fraud serves an important public policy purpose).

Defendants' heavy reliance upon the Sixth Circuit decision in *Chao v. Hospital Staffing Services* is entirely misplaced. The *Chao* case addressed the narrow issue of whether an action seeking an injunction under Section 17 of the FLSA to prevent "hot goods" from entering the market is exempt from the automatic stay. *See Chao*, 270 F.3d 374. "Hot goods" are goods produced by employees who were paid below the minimum wage. In the *Chao* case, the Secretary of the Department of Labor brought a "hot goods" action under the FLSA to prevent the dissemination of business records that the debtor employer had allegedly produced at a competitive disadvantage by paying employees a substandard wage. The Secretary sought an injunction to prevent the records from moving in interstate commerce. 270 F.3d at 378.

The Sixth Circuit held that the suit was not exempt from the automatic stay. *Id.* at 394. In particular, the court concluded that the suit did not pass the public policy test because it was brought primarily to assert and protect the private rights of certain individuals. *Id.* at 393-94. The court explained that, although some "hot goods" cases would qualify for an exemption, this particular suit concerned medical records relating to services already rendered by employees, so the suit would not prevent unfair competition in the marketplace. *Id.* at 392. Moreover, a successful suit by the Secretary would result in an injunction that would require the debtor to pay the employees' wages in order to "free" the goods. In the court's view, this requirement created "a significant property interest" in the debtor, and enforcing an injunction to obtain that property interest would function as a "vehicle to enforce the private rights of the employees" to their wages." *Id.* at 393-94.

The *Chao* case is clearly distinguishable from the instant case. First, the Sixth Circuit's holding in *Chao* (as noted above) was based upon the "peculiar circumstances" of that case where the "hot goods" relief sought did not (in the court's view) trigger the FLSA's concern about preventing unfair competition in the marketplace. 270 F.3d at 382. In contrast, the instant case is not a "hot goods" case; rather, the DOL seeks an injunction pursuant to Section 17 against further violations of the FLSA, as well as liquidated damages under Section 16(c). Those types of relief undoubtedly implicate a "public policy"

7

interest. In fact, the Sixth Circuit recognized the "important continuing public interest in restraining future violations of the FLSA's minimum wage and overtime provisions" and the "significant public interest in protecting other businesses from unfair competition" in distinguishing the peculiar "hot goods" situation from other situations. *Id.* at 392. ("In this particular case, however, that significant public interest in protecting other businesses from unfair competition is not present because the 'goods' are merely records relating to services already rendered by employees.").[4] Moreover, to the extent that the Sixth Circuit in *Chao* may have been concerned that the "hot goods" relief sought could under the circumstances of that case force actual payment of back wages outside of the bankruptcy process (*id*. at 393), no such concern exists in the instant case, since any judgment for damages entered against the defendant would be resolved in Bankruptcy Court.

In sum, the DOL brings this action under Sections 16(c) and 17 of the FLSA to serve the valid public policy purposes of enjoining further violations of the FLSA, protecting labor conditions, preventing unfair competition in the labor market, and deterring unlawful behavior by others. Successful prosecution of this action will not create a pecuniary interest for the government in the debtor's property, nor will it result in a pecuniary advantage to the government over other creditors. Accordingly, this action is exempt from the automatic stay under § 362(b)(4), the police and regulatory power exemption.

## IV. CONCLUSION

For the foregoing reasons, defendants' request that the automatic stay arising under Section 362 of the Bankruptcy Code be found to apply to this action is denied. This action is exempt from the automatic stay under the police and regulatory power exception set forth in Section 362(b)(4) of the Bankruptcy Code.

SO ORDERED.

_____
Judge Joseph F. Bianco
United States District Judge

Date:   December 1, 2011
        Central Islip, NY

\*       \*       \*

Plaintiff is represented by Daniel M. Hennefeld and Elena S. Goldstein, U.S. Department of Labor, Office of the Solicitor, 201 Varick Street, Room 983, New York, N.Y. 10014. Defendant is represented by Raymond Nardo, 129 Third Street, Mineola, N.Y. 11501.

---

[4] The Court notes that the Eleventh Circuit has found an exemption to the automatic stay to exist even in the context of a "hot goods" case. *See Brock v. Rusco Indus.*, 842 F.2d at 271-73.

8