# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

N⁰ 09-CV-2212 (JFB) (ETB)
_____

SETH D. HARRIS, ACTING SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,

Plaintiff,

VERSUS

SCA RESTAURANT CORP. D/B/A LUIGI Q ITALIAN RESTAURANT, A CORPORATION AND LUIGI QUARTA, INDIVIDUALLY AND AS OWNER,

Defendants.
_____

**MEMORANDUM AND ORDER**
March 14, 2014
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Seth D. Harris,[1] Acting Secretary of Labor, United States Department of Labor ("the Secretary") brings this action against SCA Restaurant Corporation, d/b/a Luigi Q Italian Restaurant ("SCA Restaurant Corp.") and Luigi Quarta ("Quarta") (collectively, "defendants"), asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. A bench trial was held on April 9 and April 10, 2012, as well as on October 4, 2012, to determine defendants' liability, if any. On April 5, 2013, this Court issued a Memorandum and Order detailing its findings of fact and conclusions of law, concluding that the Secretary had met her burden of proof on all of her claims.

On May 2, 2013, the Secretary filed a motion for attorneys' fees and costs. Specifically, the Secretary argues that he is entitled to reasonable attorneys' fees for work that was performed in response to Quarta's attempted retaliatory conduct against his employees. In addition, the Secretary argues that, as the prevailing party, he is entitled to all taxable costs incurred in this matter.[2] For the reasons set forth below,

---

[1] Secretary of Labor Hilda L. Solis was previously the plaintiff in this matter. However, pursuant to Fed. R. Civ. P. 25(d), Seth D. Harris is substituted for Hilda L. Solis.

[2] As a threshold matter, the Court notes that, to the extent the Court's April 5, 2013 Memorandum and Order suggested that the Secretary could seek attorney's fees under 29 U.S.C. § 216(b), it is clear that fees under that provision are only available to private plaintiffs. Thus, as discussed at the April 11, 2013 conference, the Secretary is only seeking attorney's fees in connection with the retaliatory discrimination claim under 29 U.S.C. § 215(a)(3) which was proven

1

the Court grants the Secretary's motion and awards attorneys' fees in the amount of $5,062.50 and costs in the amount of $8,183.45. In particular, with respect to the attorney's fees, the Court finds that the defendants' retaliatory discrimination against trial witnesses constituted bad faith conduct in this litigation and, in its discretion pursuant to its inherent power, concludes that attorney's fees (for the work performed in response to that conduct) should be awarded as a sanction.

I. BACKGROUND

Familiarity with the facts is assumed in light of the Court's previous opinion in this matter. *See Solis v. SCA Rest. Corp.*, 09-CV-2212, 2013 WL 1401396 (E.D.N.Y. Apr. 5, 2013).

On April 6, 2012, just days before trial in this matter was set to begin, the Court issued a temporary restraining order preventing defendants from discharging or taking discriminatory action against two employees whom defendants threatened to fire due to their involvement in this lawsuit. (*See* Temporary Restraining Order, Apr. 6, 2012, ECF No. 61.) The Court issued a preliminary injunction on April 19, 2012 barring defendants from firing or discriminating against any employees in violation of Section 15(a)(3) of the FLSA until the Court adjudicated this matter. (*See* Preliminary Injunction, Apr. 19, 2012, ECF No. 67.)

During the trial, defendants' employees testified regarding Quarta's retaliatory conduct. Jose Anibal Acosta ("Acosta"), a dishwasher, testified that on April 5, 2012, Quarta asked Acosta whether he intended to testify in court. (Apr. Tr. at 142–43.) When Acosta answered in the affirmative, Quarta told him that, if he testified, "then there's no more work for you." (*Id.* at 142.) Acosta also stated that an employee of the restaurant told him that Quarta said if Acosta appeared in court that "he would look for other workers." (*Id.* at 145.) After being told that he would lose his job if he testified, Acosta felt afraid. (*Id*. at 147.)

Juan Carlos Cantos-Chavez ("Cantos-Chavez"), who prepared the salads, also testified that, several days prior to the commencement of the trial, Quarta told the employees, using another employee as a translator, that if they came to court they "would only have work there until Saturday" (*id.* at 199), and "if [they] showed up in court then [they] . . . would not have a job anymore" (*id.* at 202). Quarta also told the employees that it was their decision whether to come to court, because they could "either come to court or [could] go to work." (*Id.* at 201.) Following these conversations, Cantos-Chavez felt pressure not to testify and questioned whether he would testify in court, and was afraid and nervous. (*Id.* at 202, 214.)

After the initial trial, the Secretary amended her complaint on April 13, 2012 to add the retaliation claim, and defendants filed an answer on April 27, 2012. The parties undertook additional discovery regarding the retaliation claim. The Court held a bench trial on October 4, 2012 so that defendants could present any additional evidence with respect to the retaliation claim.[3] Quarta was the only

---

both in connection with the preliminary injunction and at trial.

[3] With the consent of both sides, the Secretary was permitted to present evidence regarding the retaliation claim during the trial on April 9 and 10. However, to avoid any potential prejudice to defendants, the Court required the Secretary to formally amend the complaint to add the retaliation claim in order to give defendants the opportunity to conduct additional discovery on that claim and then present any additional evidence regarding such claim. Thus, the Secretary presented no additional evidence regarding the retaliation claim on October 4, 2012.

witness for defendants on the remaining retaliation claim. However, as stated *infra*, the Court found Quarta's testimony not credible, and determined that "the evidence established that Quarta intentionally attempted to prevent two of his current employees from testifying, including threatening those employees with discharge if they testified, and that his conduct was calculated to dissuade a reasonable worker from testifying at the proceeding." *Id.* at *16.

At the continuation of the bench trial on October 4, 2012, Quarta testified that, when he told Acosta and Cantos-Chavez not to come to work if they testified, he meant that they did not need to show up because he would have either closed the restaurant for the day or obtained temporary replacements. (Oct. Tr. at 2, 5–7.)

In this Court's April 5, 2013 Memorandum and Order, the Court found the testimony of Acosta and Cantos-Chavez credible, and the testimony of Quarta not credible. The Court stated:

> It is clear from the evidence, including an evaluation of the credibility of the witnesses, that there was no misunderstanding by the employees of the substance of Quarta's statements. Quarta clearly intended to communicate, and did communicate, his intention to terminate these employees if they testified, in an attempt to retaliate against them and dissuade them from doing so. Therefore, the Court finds that defendants attempted to intimidate employees from cooperating with the DOL and testifying at the trial.

*SCA Rest. Corp.*, 2013 WL 1401396, at *5. The Court then found that the Secretary had demonstrated that defendants violated the anti-retaliation provisions of the FLSA. *Id.* at *15–16. The Court awarded the Secretary $2,000 in compensatory damages for emotional distress ($1,000 each for Mr. Acosta and Mr. Cantos–Chavez), but declined to award punitive damages. *Id.* at *20.

II. DISCUSSION

A. Attorneys' Fees

On May 2, 2013, the Secretary filed a motion for attorneys' fees. Specifically, the Secretary requested that the Court sanction defendants for Quarta's retaliatory conduct against two of his employees and his attempt to dissuade these witnesses from testifying against him at trial. The Secretary has only requested fees specifically arising from the addition of the retaliation claim and the motions for a temporary restraining order and preliminary injunction, all of which stemmed from Quarta's witness tampering.

1. Are Sanctions Appropriate for Quarta's Conduct?

a. Applicable Law

"Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, (1991) (citation and internal quotation marks omitted); *see also United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991) (stating that courts may impose sanctions pursuant to "its inherent power"). These powers are "necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at

3

43 (citation and internal quotation marks omitted).

Under this inherent power, "a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45–46 (citation and internal quotation marks omitted).[4] A court may award fees both if "fraud has been practiced upon it . . . [or] when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Id.* at 46 (citations and internal quotation marks omitted). "The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." *Id.* (alterations, citations, and internal quotation marks omitted). In addition, the Second Circuit has instructed "district courts to focus on the purpose rather than the effect of the sanctioned" conduct. *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 145 (2d Cir. 2012).

However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44; *see also Int'l Bhd. of Teamsters*, 948 F.2d at 1345. In this Circuit, sanctions may only be imposed upon "a particularized showing of bad faith." *Int'l Bhd. of Teamsters*, 948 F.2d at 1345. Specifically, "sanctions are not appropriate unless the challenged actions are (1) entirely without color and (2) motivated by improper purposes, such as harassment or delay."

*Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 38 (2d Cir. 1995) (citation and internal quotation marks omitted). In addition, "the court's factual findings of bad faith must be characterized by a high degree of specificity." *Id.* (citation and internal quotation marks omitted).

b. Analysis

Quarta threatened two of his employees with termination if they testified against him in this case. It is beyond dispute that "[w]itness tampering is extremely serious misconduct." *Ty Inc. v. Softbelly's Inc.*, 353 F.3d 528, 537 (7th Cir. 2003). Even non-coercive efforts attempting to dissuade a witness from testifying is a federal crime, punishable by up to twenty years imprisonment. *See United States v. Amato*, 86 F. App'x 447, 450 (2d Cir. 2004); 18 U.S.C. § 1512(b); *see also* 18 U.S.C. § 1512(d).

Quarta's actions were entirely without color. Although Quarta testified that he made those statements to notify his employees that he would either find a temporary replacement or would close the restaurant for the day, the Court found his testimony not credible. Instead, the evidence demonstrated that Quarta attempted to intimidate his employees into believing that they would lose their jobs if they testified against him. Such an action is inherently motivated by an improper purpose; Quarta made these threats with the intent of undermining the Secretary's lawsuit and shielding himself from significant monetary damages.

Having presided over the bench trial in this matter and having both reviewed the testimony of the witnesses and judged their credibility, the Court finds by clear and

---

[4] A district court possesses this inherent power to award attorneys' fees "unless such an award [is] forbidden by Congress." *Herman v. Davis Acoustical Corp.*, 196 F.3d 354, 357 (2d Cir. 1999). In *Herman*, the Second Circuit found "no such prohibition in the FLSA." *Id.*

convincing evidence, not just a preponderance of the evidence, that Quarta attempted to intimidate these witness and that such action was taken in bad faith. *See Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1477 (D.C. Cir. 1995) ("[C]ourts require clear and convincing evidence of misconduct before imposing attorneys' fees under their inherent power.").

Although requests for sanctions following witness tampering are not common in federal court, other courts have held that witness tampering is sanctionable under a court's inherent power. In *Synergetics, Inc. v. Hurst*, the jury returned a verdict in favor of the plaintiff. 04-CV-318, 2007 WL 2422871, at *6 (E.D. Mo. Aug. 21, 2007). After the trial, the court found that the chief executive officer of the plaintiff "wrongfully induced" a witness not to testify. *Id.* at *1. The court concluded that, although it "would be justified in [vacating] the judgment," *id.* at *7, a more appropriate sanction would be requiring the plaintiff to return one-half of the total damages the jury awarded. *See id.* at *15; *see also id.* at *7 ("Witness tampering is an extremely serious offense, and strikes at the heart of the litigation process. Our system of justice relies on witnesses coming to court and telling the truth. Interference with the process taints trials and threatens the integrity of the justice system. The court has inherent authority to sanction such conduct, and this is an appropriate case for sanctions." (internal citation omitted)). In *HomeDirect, Inc. v. H.E.P. Direct, Inc.*, the court imposed an even harsher sanction. *See* No. 10 C 812, 2013 WL 1815979 (N.D. Ill. Apr. 29, 2013). In *HomeDirect*, the CEO of the defendant agreed to forgive some of the debt plaintiff's key witness owed him in exchange for a declaration refuting the accusations in plaintiff's complaint. *See id.* at *2–3. The court held that "[p]aying a crucial witness for the purpose to ensure they are useless to the opposing party is egregious" and that because plaintiff's key witness "was effectively removed from the case by the improper actions of the defendant . . . the proper sanction is to declare that the complaint is true and that [defendant] is liable for damages." *Id.* at *6.

Defendants' sole argument in opposition to plaintiff's motion for fees is that plaintiff never sought attorneys' fees in the complaint. However, as stated *supra*, the Court is awarding attorneys' fees under its inherent power, not pursuant to a statutory scheme or the Federal Rules of Civil Procedure. *See Chambers*, 501 U.S. at 43–46. Moreover, defendants received notice regarding plaintiff's motion and an opportunity to submit opposition papers.

The Court has considered if there are other possible sanctions to punish defendants for this egregious conduct but, given the circumstances of this case, concludes that a monetary sanction is the most appropriate sanction. Accordingly, plaintiff is entitled to reasonable attorneys' fees for the work performed in response to Quarta's attempted witness intimidation.

2. Are the Requested Fees Reasonable?

a. Applicable Law

Under Second Circuit jurisprudence, when determining whether an attorneys' fee is reasonable, the court must determine the "presumptively reasonable fee," keeping "in mind *all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008); *see Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see generally Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010). "In order to

calculate the presumptively reasonable fee, the Court must first determine a reasonable hourly rate for the legal services performed." *Finkel v. Rico Elec., Inc.*, No. 11-CV-4232, 2012 WL 6569779, at *13 (E.D.N.Y. Oct. 1, 2012) (Report and Recommendation). "Courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (citation and internal quotation marks omitted). Additionally, in calculating a reasonable hourly rate, courts must balance the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3. When "determining what a reasonable, paying client would be willing to pay," the Second Circuit has also instructed courts to balance:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Id.* at 184.

In addition, the fact that the legal work in this case was performed by government attorneys, as opposed to private individuals, has no effect on the court's calculation of a reasonable fee. *See NLRB v. Local 3, Int'l Bhd. of Elec. Workers*, 471 F.3d 399, 407 (2d Cir. 2006) ("[D]istrict courts in this Circuit generally employ market rates to calculate awards of government attorneys' fees."); *Adams v. N.Y. State Educ. Dep't*, 630 F. Supp. 2d 333, 348 (S.D.N.Y. 2009) (same).

b. Analysis

The Secretary requests a rate of $225 per hour for the work performed by Department of Labor trial attorneys Daniel Hennefeld ("Hennefeld") and Elena Goldstein ("Goldstein") in connection with defendants' retaliatory conduct. Hennefeld has more than five years of litigation experience (Decl. of Daniel Hennefeld, May 2, 2013 ("Hennefeld Decl.") ¶ 9), and Goldstein has been an attorney for nine years, with nearly four years of litigation experience at the Department of Labor (Decl. of Elena Goldstein, May 2, 2013 ("Goldstein Decl.") ¶ 3). After considering the prevailing market rate in this district, and the relevant factors set forth in *Arbor Hill* (since most of those considerations are not applicable to this case), the Court finds that $225 is a reasonable rate in this matter. *See Eu Yan Sang Int'l Ltd. v. S & M Enters. (U.S.A.) Enter. Corp.*, No. 09-CV-4235, 2010 WL 3824129, at *7 (E.D.N.Y. Sept. 8, 2010) (Report and Recommendation) (stating that in this district, reasonable rates range from "$200 to $250 an hour for senior associates"); *see also Callier v. Superior Bldg. Servs., Inc.*, No. 09-CV-4590, 2010 WL 5625906, at *8 (E.D.N.Y. Dec. 22, 2010) (Report and Recommendation) (awarding $250 an hour to attorney with eight years experience in a "relatively straightforward FLSA" case).

The Secretary requests compensation for 11.25 hours of work performed by Hennefeld and 11.25 hours of work performed by Goldstein in connection with the retaliation claim and the motions for a temporary restraining order and a preliminary injunction. (Hennefeld Decl. ¶ 11; Goldstein Decl. ¶ 5.) These hours actually under-compensate the Secretary for the work performed by his attorneys. Both Hennefeld and Goldstein have reduced the amount of time they worked on this matter, most notably by not including travel time to and from the courthouse in Central Islip, and by not including the time spent on this motion. (Hennefeld Decl. ¶ 12; Goldstein Decl. ¶ 6.) In addition, the Secretary is not requesting fees for the supervising attorneys who reviewed and advised Hennefeld and Goldstein. (Hennefeld Decl. ¶ 12; Goldstein Decl. ¶ 6.)

Because the Secretary has requested a reasonable fee of $225 an hour for the work of Hennefeld and Goldstein, and because the hours billed on this matter are quite modest and supported by the record, the Court awards attorneys' fees of $5,062.50 in its discretion, pursuant to its inherent power.[5]

B. Costs

Under Federal Rule of Civil Procedure 54(d), costs are awarded to "the prevailing party." The term costs, as used in Rule 54, is defined by 28 U.S.C. § 1920 and includes, *inter alia*, fees for transcripts, docket fees, and compensation of court appointed experts and interpreters.

The Secretary seeks reimbursement for: (1) transcription costs for the bench trial on April 9 and 10, 2012; (2) transcription costs for the deposition of Quarta; (3) the statutorily required witness fees of the four witnesses the Secretary subpoenaed; and (4) interpreters' fees for translating the testimony of four witnesses at trial that did not speak English (not including travel expenses). (Hennefeld Decl. ¶¶ 3–7.) Defendants do not oppose plaintiff's motion for costs.

Having reviewed Hennefeld's declaration and the supporting documentation, the Court

---

[5] The Court notes that defendants have not submitted any opposition regarding the requested hourly rate or the number of hours expended by Hennefeld and Goldstein.

finds that these costs are reasonable. Accordingly, the Court awards the Secretary costs of $8,183.45.

### III. CONCLUSION

For the foregoing reasons, the Court grants the Secretary's motion for attorneys' fees and costs. Plaintiff is awarded costs of $8,183.45 and attorneys' fees of $5,062.50.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 14, 2014
      Central Islip, NY

\* \* \*

Plaintiff is represented by Daniel M. Hennefeld and Elena S. Goldstein, U.S. Department of Labor, Office of the Solicitor, 201 Varick Street, Room 983, New York, N.Y. 10014. Defendant is represented by Raymond Nardo, 129 Third Street, Mineola, N.Y. 11501.